Good morning. May it please the Court, this case challenges... Could you give your name for the record, please? David Kiernan on behalf of Appellants. Thank you. This case challenges the state's five-phase policy, which on its face discriminates among religions, using taxpayer dollars to fund chaplains of only five faiths and refusing to consider or employ chaplains of any other faiths. The state concedes in its briefs and in discovery that it must justify that program. It must use what it states are religion-neutral criteria to determine which chaplains to apply. But as the evidence shows, and this is undisputed, they have applied no criteria in determining which chaplains to apply. What specific relief would you want the district court to grant? Tell us exactly what you want. It would be an order with three parts, Your Honor. One is to end the five-phase policy maintaining paying chaplains without neutral justification. Number two is to apply neutral criteria to determine which employees to apply. And then three, give the wardens discretion to determine which chaplains to apply for that particular institution applying those criteria. So instead of a decision being made in Sacramento, instead of the wardens pursuant to the district court to be telling the Department of Corrections how it's going to determine and administer a program if they had a revised program, is that right? Your Honor, it is to comply with their own California Code of Regulations, which is 3210, that states that the wardens, depending upon the number of inmates of the various faiths, chaplains may be employed or their services may be accepted on a nonpaid volunteer basis. And for years, wardens were permitted to follow, pursuant to 3210, to hire chaplains even on a contract basis until the head of the CDCR passed the five-phase policy that limited the hiring to only five faiths. They made a denominational preference in Sacramento preventing institutions from applying the neutral criteria that they, in fact, admit they must apply. One of the issues I would like to focus on is standing for this challenge to the five faiths. This is a little more unusual than your standard establishment clause because we have the prison population involved. So the policy as to who to have as a chaplain is an internal prison policy, correct? Yes. And it's supposedly, in their view, based on the inmates' religious rights, is that right? That's their position, right. In other words, that's the reason that you have various religious programs available to the inmates is because of the inmates' religious rights, correct? Correct. So the question then becomes, and I think the question the district court struggled with, if that's the foundation for the five-phase policy, which really relates to the inmates, how is it that the outside chaplain can piggyback on that First Amendment right to have standing? Well, the chaplain or taxpayer can challenge the denominational preference by the State, and the State is permitted to raise as a defense, as it has, a justification for those denominational preferences. I think a hypothetical will illustrate this. Imagine the CDCR eliminates all of the classifications except for the Protestant classification. It's the only one they have. And they have no justification for doing it, perhaps just religious animus, against all other faith groups. Under the CDCR's and the district court's reasoning, an outsider, whether it's a taxpayer or a chaplain, could not challenge that policy. That can't be the law. Why not? Because the individual has an injury. The injury is being discriminated against. This is analogous to the equal treatment cases like that in Heckler v. Matthews and the Weissmuller case that we cited in our brief, where the applicant, the individual is being treated differently solely because of their religion. Yes, but the point of, I think, Judge McKeown's question was the inmates certainly have a standing. They certainly have a cause of action. That's correct. Why do other people who aren't in prison have a cause of action for that? For the Article III, putting aside taxpayer standing for a moment. No, I'm going to put aside the taxpayer. For the individual, because the individual is being discriminated against without a constitutional justification. If the justification is that the inmates are entitled to chaplains of particular faiths, whether it's the five, whether it's three, whether it includes a Wiccan, a pagan chaplain, that's the justification that they need to defend the denominational preference. But it doesn't excuse that they've discriminated against Reverend McClellan and other chaplains solely because of his religion. That's the core issue. But the leaving aside his other complaints about the security and the delay and being able to continue as a volunteer chaplain and focusing solely on the five-faith policy, what I'm having trouble understanding is that it just seems to me that in some way his standing is derivative of inmates' standing, because the – so it's not a normal – it would be one thing – let's just say he wants to apply to be a prison guard, and they say, you know what, we're not going to have anybody who's a prison guard who's a Wiccan because we just think we don't like those people. That seems to me his direct claim to wanting to be a prison guard, and that doesn't really have anything to do with the inmates' rights. Would you agree with that? Yes, but I don't see it there. Okay. Well, I'm just asking. Okay. So that's one case. That's an easy case. He could sue. In this case, the only reason that there's an issue as to what kind of chaplains you have and what number and all that, it's because of the inmates' rights, not because of his rights. And that's why I'm having some trouble, because he doesn't really fall in the ordinary standing situation. Right. And I think the struggle comes from both the State and the district court conflating two issues. Reverend McCollum and others similarly situated have a right not to be discriminated against. They have that right under the Equal Protection Clause, and in this case also the Establishment Clause, challenging denominational preferences. They have raised as a defense that the inmates, their defense is we are permitted to discriminate because we have to accommodate religions. But that doesn't take away his right not to be discriminated against. He may ultimately lose the justification after a trial. The trial, the fact finder could find that the CDCR had applied criteria on this record. I don't think that's possible, but that they had applied criteria and that they meet the criteria. But it doesn't take away his right, his injury. And I think that the Heckler v. Matthews case noted an equal treatment case, unequal treatment cases, that typically the remedy, and this all frankly goes to remedy, it may mean withdrawal of the benefits from Reverend McCollum. I mean, withdrawal of the benefits from the class at large, that would be the five phase, which would also include all chaplains, or it would be fixing the program, which would include Reverend McCollum. But they have to go through that analysis. And that is this sort of intersection between the Equal Protection Clause, which normally, if I come in and say, look, you're not actually treating me the same, that's the problem here. He's not – in fact, he affirmatively says, I'm not trying to get rid of these other five people, or five categories necessarily. They can have those. They can have another one. They can have different ones. So he actually doesn't challenge that you could have religious-specific categories, right? That's correct. Okay. So now we have this odd situation. We're normally under the Equal Protection Clause. That would be where this – where you'd sort of fight this battle. You've put it under the Establishment Clause. Do you think it's treated differently under the Establishment Clause than it is under the Equal Protection Clause? Great question. Not with denominational preferences. It's treated the same. Because? Because the – in Larson v. Valente, and then recently in Judge McConnell, now Professor McConnell's decision, the Weaver, the Establishment Clause prohibits denominational preferences. That is treating religions differently, taking a position on religion. So essentially, when you step back and look at all the cases in the Establishment Clause arena, and frankly in free exercise now, the Supreme Court and the Ninth Circuit have used an equal protection type analysis in the Establishment Clause setting, particularly in the denominational preference setting. And that's represented, Larson, also in Cutter, which noted that under the Establishment Clause, when you accommodate religion, they must be accommodated neutrally among religions. It's used in an equal protection type analysis. But then, you see, but that's where the accommodation is not as to him. It's as to the inmates. And that's where, if I follow all those cases right to that point, and then I say, that makes sense. But the difficulty is that the decision on how to put in this mix of chaplains comes from inside the prison. It's not external to the prison. And that's where I'm trying to figure out. That's where I just keep coming back to. Kagan. I'm just curious. Do you have any – is there any case like this where there is some event inside a prison in which there's various rights, but that a third party is then given, in effect, the right to enforce those rights? Can you think of any analogous case that we might look to for some kind of persuasion in this? None in the prison setting that comes to mind. But I still think the – it's conflating the inmates' rights, and we recognize, the State recognizes, they have a free exercise right, and they also have statutory rights under RLUIPA for religious accommodation and prohibiting the State from substantially burdening their religious exercise. But outsiders, including Chaplain McCollum and others similarly situated, have a right not to be discriminated against. So if – let's say, you know, they have those criteria, their neutrality criteria, which I know they didn't apply in this case, except on paper after the fact. Right. They said, well, these would all be met. So take it, your client, from reading the papers, if the decision of the court were go back and apply your own criteria and then figure out what religions are – based on your money, are entitled to an actual paid chaplain, that that, in effect, would satisfy your client. That would actually give him the relief he wants. Right. Because then he's not treated unequally. And he may or may not – his religion may or may not come up a winner in that process. That's right. We are not seeking, and the plaintiffs are not seeking an order that they pay for a Muslim chaplain, not a Native American chaplain, a Wiccan pagan chaplain, an Odinus chaplain. Instead, we're requesting an order that requires them to apply neutral criteria. And one point on neutrality, the State has said that the predominant factor is liturgical needs. We also disagree on what the criteria would be, what the neutral criteria would be. Surely after – not surely, but certainly after this case decision in Shakur and the decision on the Supreme Court, Weaver, case of the 10th Circuit, made clear that the State cannot involve – it cannot engage in intrusive matters of theology determining what is liturgical, what isn't. At bottom, when you read their brief and you read the discovery, they have justified not providing a Wiccan pagan chaplain because they've decided that the monotheistic Abrahamic religions, Catholic, Protestant, Jews, and Muslims, they're liturgical. And the State has decided we will provide liturgical religions based on our view of what the central tenets of those religions are, relying upon six or seven declarations by chaplains. They get it. Non-liturgical religions do not. And the Native Americans only get it because of a lawsuit. Let me ask you a question. Suppose we were to find that McCollum does not have standing for the reasons already discussed, but that inmate Scott Collins does, and that his lawsuit should go forward. Can you still get the relief you want with that kind of lawsuit? Yes. I'm going to reserve. Let me ask you about Mr. Collins. Isn't the – in terms of exhaustion and the timing, isn't his claim beyond the statute of limitations? Collins, two points, Your Honor. It's not in – it's stipulated in the record. Collins' reluptant constitutional California Constitution claims are not time-barred. So if they are exhausted – Well, they're a reluptant claim, but that's separate from an establishment claim, correct? Well, but the California Constitution also has an establishment clause. It tracks the Federal establishment clause, and the CDCR has not – How about if Collins' claims were viewed as a continuing sort of violation? Would that also be? And then the second point is on the establishment clause and the free exercise – not free exercise – free exercise and equal protection clause and the continuing violation doctrine, because this was a systemic policy by the State to prohibit the State from hiring Wiccan pagan chaplains. He falls within the statute of limitations. Thank you very much, Mr. Kirby. Good morning, Your Honors. Josh Irwin on behalf of the State defendants. I really wish we had more time. This is such a complex area of law, and so I'd like to save five minutes at the end if you could please let me know so I can go over a few extra points. But, you know, in the end, what this really comes down to is plaintiff's approach, what they're suggesting, would deny the State the ability to – the flexibility to meet the actual religious needs of the different faith groups. The State has a mandate. It's supposed to accommodate the religious needs of all inmate groups, all interested parties. That is supposed to be the threshold. And so we do have a policy that accommodates everyone. But the reality is that not every inmate faith group, the needs of an inmate of one group versus another, they will differ. So there's not a neutral criteria, predetermined criteria that can be applied across the faith groups. I thought you have a neutral criteria. The neutral criteria that exists to the extent – when I say neutral, no Larson neutrality standard can apply. What does neutral mean? It means not arbitrary. So, yes, if you look at why it is the CDCR currently, right now, gives Jewish inmates Jewish rabbis, it is based on neutral criteria in that it's not arbitrary and it's not to favor the Jews. It is because there is widespread demand across the prisons. There is liturgical or religious need that's recognized among Jews for kosher programs and for other religious services that are based on common theology, the Torah, the Talmud. These demands are not just localized at one prison. The CDCR has a fluid, dynamic population of inmates. There are six of these factors that you take into account. So the factors, what we try to articulate is why are we doing it today? You can look historically and you can see back in 1930, I think the record is clear that always trying to accommodate the religious needs has always been the motive. That's what we did. Let's get to the bottom of it. Yeah. Did you apply these criteria to come up with these five fakes? We did not apply any standard criteria from 1930 all the way to the present. Instead, what we've done is in response to trying to figure out what are the – why are we doing it today? For each of these different groups, we've looked at it. We believe, and the evidence shows, there's not enough volunteers for any of these groups. The demand is widespread. They have religious need, congregations that require specialists. Let me just get it. Yeah. This has sort of evolved over time and this is the situation we have. Sure. But all they're saying, I think, is, well, you have these neutral criteria, but you haven't applied them to see if you would come out with the same result. You have sort of after-the-fact, but you haven't in any administrative fashion. You know, maybe – maybe Buddhist would surpass one of these other religions, assuming you only had money for five. Or maybe you'd decide you want six. I don't know. But there's a lot of other religions as well and some people that might not consider their religion Protestant, for example, but that definitely doesn't fall in any of the other categories. So all they're really saying is they just want a chance that these criteria would be applied and they may be – they may be the losers at the end of that. Right. And, you know, Your Honor, I think that what they're basically saying is that if they were running the prisons, they would take an overall view and try to do things differently. And what we're saying is that what the State has done is it has over time responded as new demands and demands come up. Why do you have these criteria? The criteria reflect why we are actually doing it for those religions. So how would this come up in a challenge? If an inmate filed a grievance and said, I believe that I am the same as my Jewish brothers over here. I have religious need that is the same. I also have a need for a chaplain of my faith. We're comparable numbers. Then that could trigger an analysis where you have to look, well, are they the same? What you can't do is come up with something that says, well, let's just pick a number. Let's say 500. If you get 500, then you get a chaplain. Well, no, maybe not, because what do the 500 inmates of that faith group X need? Do they need to be able to perform their own rituals? You see, but that's kind of a – that's – the prison has this rule or this – you know, we didn't create it. They have this – Approach. Well, you have an approach, but apparently the – under the California Code of Regulations there's actually a regulatory approach as well. Sure. So all they're saying is, well, let's just apply that approach in a case involving the Wiccans and, you know, see what the result is, because there's no record of how it's been applied vis-a-vis the Wiccans. You're right. And I think that the issue here is that the – My question is, did you ever go to mediation in this case and talk about that issue? I don't believe that the parties have gone to mediation and talked about that issue, no. Okay. You know, I think in the end the question is – what you're saying is, is the CDCR – can the plaintiffs require the CDCR to say, okay, we're going to just look at the whole thing again? And I think the answer is no. I think the answer is between the free exercise clause of the inmates here and the establishment clause and the other within the First Amendment, it is not a tightrope that the CDCR must walk. It is a path, and they can choose how to accommodate reasonably. Okay. But if McCollum doesn't have standing to even get into court, he doesn't have the right to ask for anything. Let's suppose we limit it to the inmates' claim. So the inmates – in the end, the only way an inmate can challenge – this is really what it is. What is the test to apply? Not when the State's trying to restrict religious practice, but when they are giving an accommodation. How do you determine if that goes over the line to become an establishment? McCollum filed a grievance saying he couldn't get a chaplain when he was sick, something to that effect. Oh, Collins did, yes. Collins did, yes. Collins, that's what I mean, yes. So there's several reasons. In the end, all an inmate can do is challenge it under an equal protection clause. This isn't a case where they're saying I'm coerced or somehow there's some – Let me just follow this through. He files this grievance saying I couldn't get a Wiccan chaplain when I was deathly ill, something to that effect. Right. Now, this goes now to district court. Judge Fogle threw out Collins' claim on the grounds that he – Friar. Friar. I mean, threw out the – threw out Collins' claim on the ground that he hadn't exhausted his – his grievance, hadn't exhausted this point. And that was a correct decision because – Suppose we disagree with that. Then what happens? Then can Collins go litigate his equal protection claim? I'm not certain – well, I'm not certain about that because of the time bar, because I do believe the judge went through a lot of detailed information on statute limitations and things of that nature. I don't think so. But what I would say is if you look at that exhaustion issue, the whole point of exhaustion is to say what is the remedy that the State would think when they look at that grievance that's being asked for. And nowhere in Collins' grievance would the remedy be we need to compare him against the Jewish inmates or the Catholic inmates or one of the other inmate groups. The remedy he asked for is for access to McCullum or access to allow a volunteer in, the same as other groups are getting. Well, he may win or he may lose. But, I mean, he would have – if we find that his grievance got him in the door, he's – he's off and running. I mean, the issue is then teed up and then Judge Breyer can deal with it as he – he said. I think that if you did find that one of the inmates' claims was, in fact, not barred and it was exhausted as far as, you know, the grievance says, why are my Jewish brothers getting this, but I am not? I am the same as them. And if that was what the grievance said, then I would agree – and it doesn't. But in that case, which does exist in the Hartnett case and the Rauser case, which is before this Court, in those kind of cases, I believe, yes, then what would happen? The only claim that inmate would have would be an equal protection claim. I am the same. He would not have any other claim. Free exercise claim, no, because we all, I think, can agree that the free exercise claim does not require the provision of accommodations except for really limited situations like kosher food where you're doing a forbidden act. But otherwise, there's no way that in a free exercise claim you get your own chaplain. How about an Establishment Clause claim? No. Because the Establishment Clause claim in the prison context, it has to be, is what the State's doing a reasonable accommodation or not? They get back to process. Yes, process, you know, did we do some formalized assessment? But he could make that claim and presumably then there would be the defense, which is, well, we obviously have accommodated in an effort to meet free exercise issues, we've accommodated and we've actually established these categories of paid chaplains and we have all these other volunteers to come and go for a variety of reasons. But he could make the claim. He may not be successful, but there's no reason he couldn't make a claim or an inmate couldn't make a claim, correct? In an appropriate case, you certainly could make that claim. Of course, when you're looking at that analysis, it might be the prison says, well, you say you need it, okay. Well, you're in San Quentin. There are many Wiccan pagan groups around. We have volunteers for you. If the State can meet that accommodation in that way, or perhaps instead it's like Spooner, he's an inmate. He says, I am my own high priest. I just want to be able to practice myself. So that's why it really shows the CDCR can't come up with some formalistic criteria that says if you, you know, if you meet certain X, Y, and Z, for sure you get a chaplain. You have to look at what is the person asking. Giving a chaplain is a means to an end. It is when the State gets to the point where there is no other way to reasonably accommodate. And the record is clear that currently the evidence is clear in the record and undisputed and the other side does not dispute. It is reasonable to give each of those groups their own chaplain of their own faith. That's admitted in this case. Okay. So now let's go back to Mr. McCollum's case. Yeah. You know, he's a Wiccan chaplain, and he would like, one, he'd like the five-faith policy to be, you know, put in the garbage. Sure. And he says – There's no five-faith policy, by the way. I mean, you could say he'd like to reevaluate who gets them. But the five-faith policy, that doesn't exist. You have five accommodation decisions. Right. I think that's one of these sort of quotation things. Yeah. Because we don't want to say all those religions each time we talk. Because the doors open, Your Honor. The Muslims and the Native Americans, over time, prison trends change. During the 70s, the Muslim population became very large. The CDCR tried to – The real question is as to Mr. McCollum, being a Wiccan chaplain from the outside, he's basically saying, I can't get hired because there are no such positions for me. So that's just flat-out discrimination. So why shouldn't I have standing to at least make that claim? And if I don't have standing to make that claim, why shouldn't I be able to at least say, vis-à-vis me, Mr. Chaplain, or Reverend Chaplain, I at least am entitled to equal protection in terms of having neutral criteria determine whether or not I can be a chaplain. If the Court accepts it, I think it must, which is that a faith-specific accommodation is permissible. You can look at a religion and you can say, what is it that you need? There's no value judgment there. It's not, oh, your religious need is better than another, so we'll accommodate it. There's no evidence of that. I mean, I think they agree on that point. Sure. It may be the only point you all agree on. Why is it that he can't have standing in this case?  Because it is, if you accept you can have a faith-specific accommodation, he cannot provide Jewish religious services. He cannot provide Catholic religious services. If the opening is for a Catholic priest, the reason we're giving it in the record is because the inmates need communion. So if you accept that, no one, not a Jewish chaplain, not myself, not any other religious group except a Jewish religious specialist, could meet the needs of the Jewish inmates. And that is why he's not harmed. The free exercise rights of the inmates is what drives this process. A third party cannot come in and say this. He would say, well, that's like saying, okay, we're only going to let women be secretaries in the prison. And I can't apply, obviously, because you made that rule. No, certainly not, because in this, well, it's ironic, because the Muslim faith, if you're a male, they are required under their faith to have male chaplains. Female chaplains for the Muslim faith are hired for the females. You have to look at what the religious needs are. And so McCollum, as an outsider, cannot come in. He has no standing to interfere with how it is the CDCR is trying to meet another inmate group's needs. The only people who could challenge it would be a true taxpayer who says, I'm sorry, there's no Jews in prison. There's no reason to be accommodating this. This is just an establishment of religion. And then what the Court could do is say, you know what, we're going to strike down one or more of the five accommodations that are at issue in this case. That does not give the relief that Mr. McCollum wants. Because if you strike down the Jewish accommodation, then the chances that Mr. McCollum can somehow be a substitute accommodation, go back to the drawing board, that does not create a job opportunity for him. He claims his injury is the fact that he can't apply for a job. Well, that requires first that there be a job available to him which he's qualified to apply for. If the Jews are not a job. Right. But in his view, is because you have not been equal handed in your comment. Because we have not done it yet for the inmates who are weakened. That's what he says. Yes. Yes. And I think the reality is, first, that is a predicate issue which it depends on the inmate's rights. If those inmates did have a need and they were given that context, then yes, he would be able to apply for that job. And let me ask you this. If Mr. Collins' complaint was a little opaque on this subject as to whether he might actually get this review, could any Wiccan inmate today file a lawsuit? Would he or she have standing to file a lawsuit and say, you know what, the problem is it's a lot different if you have like a real-life paid chaplain than a volunteer. And so the Wiccans need that same degree of coverage, so to speak. And here's all the reasons we do, because we have as many people as the Jewish faith. Okay. Would an inmate walk out today and file that? Would they have standing? I believe that just like in Hartman, which Mr. McClellan and his wife are currently representing in the Eastern District, that is exactly the claim that they have brought. But Scott Collins, back in 2002, he has not – he has not brought that kind of claim again, and that's barred. So I'm not saying that there's not a case in which this can be challenged. Another case, the taxpayer could challenge it as unreasonable. That's not Mr. McClellan's claim. In another case, an inmate could raise these issues, and it has been raised, and this is going to be litigated. But it's not this case. And the one last point I really think is important is process. You know, they're talking about process. It is important, but it is important in the context of deciding. Is the state just being arbitrary? Are they valuing one religion better than another? Do they think that Catholics are really a good religion and Wiccans are bad? No. It's about whether or not is it reasonable. And if you look back at why the process, the organic process responding to trends over time, why that's occurred, it's because the CDCR has determined that over time, the It changes. And why are they giving it to these five faiths? It's because there's the belief that volunteers are inadequate, that these are large groups that are across all the institutions, and the door is not closed. Okay. Thank you. Thank you. Thank you. I really wish I had more time. It's such a complex case. One last thing. Actually, your time is up. Thank you. Okay. Well, now, Mr. Caron, I think you have some remote. Hang on. I'll go to the microphone if you would. Thanks. First, I'm going to ask for some cases that are analogous. I think the Young Apartments case, the Singleton v. Wolfe case, Craig v. Bourne, they all involved where the injury, the direct injury was to one class of individuals, but the court permitted the folks with the indirect injury, the service providers, to bring those cases. What was the first case? Young? Young Apartments. Oh, Young Apartments. Yeah. With the Hispanic attendants. Correct. Discriminated against. Second, Your Honor, we had two mediations in this case discussing this very issue with Judge Spiro, and I was personally told by the attorney for the AG's office. Well, we don't want to know what happened in the mediation. My question was, was there? There were two mediations discussing whether or not criteria would be applied. With respect to the arbitrariness, plainly haven't applied any criteria, and they need some justification for this policy. And then he states that it's not arbitrary and goes right back to the criteria. The evidence is clear. It's undisputed. The State has never applied criteria. It's been the same for 50 years. They only paid monotheistic Abrahamic religions for 50 years. They only paid the Native Americans because they were sued by the Native American, and it was a settlement. That was 20 years ago. In the last 20 years. That was an inmate suit, correct? It was an inmate suit, but they haven't looked at it. Right, okay. And that brings me to the next point. Okay. Just make your last point, and then we'll move on. Okay. Counsel admitted that a taxpayer can bring this case, which makes sense because he also said that an inmate can only challenge the five-phase policy under the Equal Protection Clause. Well, if that's true, Your Honors, then Patrick McClellan must be able to bring this Establishment Clause case because then no one else would have it. Well, I think what he said was he said Equal Protection because he thought they wouldn't have a claim, wouldn't win under Establishment Clause. Right. Ignoring Cutter v. Wilkinson. Well, but maybe they'd win or maybe they wouldn't. I don't know the answer to that. But I think he thought they wouldn't win, but that's kind of irrelevant to this point. And then finally, Your Honors, with respect to the arbitrariness, when we asked during the 30b-6 deposition the agent of the State why they haven't looked at these criteria in determining who to employ, he said, quote, because the five-faith group has already been established. We only employ chaplains for existing five-faith group populations, Protestants, Catholics, Jews, Muslims, and Native Americans. So we don't have to consider it. They are already established. Thank you, Mr. Kiernan. Thank you. Thank you, Irwin. The case is ready to submit. Very interesting case, gentlemen. Thank you. I appreciate it, Mr. Kiernan, for briefing. That we have already briefed. Oh, wait. Thank you. Thank you. Thank you.
judges: Thompson, Silverman, McKeown